**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: ASBESTOS LITIGATION | ) | |
| | ) | |
| MARILYN CHARLEVOIX, Individually | ) | |
| and as Executor of the Estate of Stephen | ) | |
| Charlevoix, Deceased, and on behalf of all | ) | |
| Wrongful Death Beneficiaries, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-726-ER-SRF |
| | ) | |
| CBS CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently, there are five motions for summary judgment before the court in this asbestos-related personal injury action. The motions were filed by defendants, Caterpillar Inc., ("Caterpillar") (D.I. 154), VIAD Corp. ("VIAD") (D.I. 158), Warren Pumps, LLC ("Warren Pumps") (D.I. 164), Crane Co. ("Crane") (D.I. 150), and Ford Motor Company ("Ford") (D.I. 160) (collectively "Defendants"). As indicated in the chart *infra*, and for the reasons set forth below, the court recommends granting Defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| Caterpillar Inc. | GRANTED |
| VIAD Corp. | GRANTED |
| Warren Pumps | GRANTED |
| Crane Co. | GRANTED |
| Ford Motor Company | GRANTED |

## II. BACKGROUND

### A. Procedural History

Plaintiffs Stephen and Marilyn Charlevoix filed this asbestos related personal injury action in Delaware Superior Court against multiple defendants on July 10, 2015. (D.I. 1) Crane removed the action to this court on August 21, 2015. (*Id.*) On December 14, 2016, Plaintiff filed an Amended Complaint, asserting wrongful death claims.[1] (D.I. 197) The court entered the Amended Complaint on December 20, 2016. (D.I. 198) Crane, Caterpillar, VIAD and Ford filed motions for summary judgment on September 30, 2016. (D.I. 150, 154, 158, 160) Warren Pumps filed a motion for summary judgment on October 4, 2016. (D.I. 164) Plaintiff opposes the motions. (D.I. 171, 173, 175, 177, 216) The court held oral argument to address the summary judgment motions of Caterpillar, VIAD, and Warren Pumps on January 11, 2017.[2]

### B. Facts

Plaintiff alleges that Mr. Charlevoix developed mesothelioma as a result of exposure to asbestos containing materials from his work with various employers and service in the Navy. (D.I. 198) Plaintiff contends that Mr. Charlevoix was injured due to exposure to asbestos-containing products that Defendants manufactured, sold, distributed, or installed. (*Id.*) Accordingly, Plaintiff asserts claims for negligence, loss of consortium, and punitive damages. (*Id.*)

Plaintiff states that Mr. Charlevoix was first exposed to asbestos-containing products during his service as a boiler tender with the U.S. Navy from 1961 to 1964 aboard the USS

---

[1] Mr. Charlevoix died on February 25, 2016. (D.I. 197 at 1) Marilyn Charlevoix filed the Amended Complaint as Executor of the Estate of Mr. Charlevoix. (*Id.*)

[2] On February 24, 2017, Ford requested oral argument on its motion. (D.I. 220) The court denied the request on February 27, 2017. Crane did not request oral argument on its motion.

Valley Forge. (D.I. 198) After his service in the Navy, Mr. Charlevoix worked at Grede Foundry from 1964 to 1966 as a grinder. (D.I. 198 at ¶ 1) From 1966 to 1978, Mr. Charlevoix worked as an equipment operator and foreman for M.J. Electric. (*Id.*) After leaving M.J. Electric, Mr. Charlevoix went to Charlevoix Logging to work as a logger, where he worked until 2012. (*Id.*; D.I. 171 at 7)

Mr. Charlevoix was deposed on December 15, 2015. (D.I. 155, Ex. 1) Product identification witness, James Kimble, was deposed on May 24, 2016. (D.I. 177, Ex. 7) Product identification witness, Patrick J. Milligan, was deposed on May 26, 2016. (D.I. 155, Ex. 3)

The parties agree that maritime law applies to all naval and sea-based claims. (D.I. 159 at 1) Additionally, the parties agree that Michigan law applies to all land-based claims. (D.I. 155 at 1)

### C. Testimony of Product Identification Witnesses

#### 1. Patrick Milligan

Mr. Milligan worked at M.J. Electric from 1975 to 1979 as a mechanic and truck driver. (D.I. 171 at 6) After leaving M.J. Electric, Mr. Milligan worked at Charlevoix Logging from 1979 to 2012. (*Id.*) Mr. Milligan testified regarding Mr. Charlevoix's work experience and duties at both M.J. Electric and Charlevoix Logging. (*Id.*)

#### 2. Howard Kimble

Mr. Kimble served aboard the USS Valley Forge from January of 1960 through October of 1963. (D.I. 175 at 7) He was assigned to the ship's evaporator room from October of 1961 through October of 1963. (*Id.*) Mr. Kimble worked with Mr. Charlevoix in the evaporator room starting in October of 1961. (*Id.*) Mr. Charlevoix remained in the evaporator room at the time Mr. Kimble left that assignment in October of 1963. (*Id.*)

### D. Plaintiff's product identification evidence

#### 1. Caterpillar Inc.

Mr. Charlevoix stated that he performed maintenance work on eight Caterpillar bulldozers during his time at M.J. Electric. (D.I. 155, Ex. 1 at 140:2–141:15) Mr. Charlevoix estimates that the models of the eight Caterpillars consisted of four D3s, two D4s, one D6, and one D8. (*Id.* at 142:11–23) Mr. Charlevoix stated that most of his work involved fixing hydraulic leaks. (*Id.* at 145:7–15) He stated that he does not associate asbestos exposure with his work at M.J. Electric. (*Id.* at 157:22–158:4)

Mr. Charlevoix testified that Charlevoix Logging used Caterpillar equipment to create roads. (D.I. 155, Ex. 1 at 99:17–20) However, Mr. Charlevoix clarified that when using the term "Caterpillar" he was referring to a general dozer tractor that could have been manufactured by other companies. (*Id.* at 99:22–100:4) Mr. Charlevoix stated that he did own a tractor that was actually manufactured by Caterpillar before trading it. (*Id.* at 100:5–16) Mr. Charlevoix said that he had the Caterpillar tractor for ten years, and that it was a D4 model. (*Id.* at 103:13–22) He explained that the only repair work that he did on the Caterpillar tractor was to "put a set of tracks on it." (*Id.* at 103:23–25) In 1980, Mr. Charlevoix purchased a secondhand grader that was manufactured by Caterpillar. (*Id.* at 117:25–118:4) Mr. Charlevoix stated that he believes the Caterpillar grader was manufactured in 1942 or 1943. (*Id.* at 118:9–10) Mr. Charlevoix stated that he still owns the grader and has performed maintenance on it. (*Id.* at 118:7–23) He explained that he has replaced injectors and has tightened up "knuckles and front ends" on the grader. (*Id.* at 118:17–19) When asked whether he believed the maintenance exposed him to asbestos, Mr. Charlevoix said that he did not believe it did. (*Id.* at 119:4–5) Mr. Milligan said he did not know whether Mr. Charlevoix was exposed to asbestos during his work at M.J. Electric

or Charlevoix Logging. (D.I. 155, Ex. 3 at 111:25–112:2)

### 2. VIAD/Griscom-Russell

Mr. Charlevoix was assigned to the evaporator room aboard the USS Valley Forge. (D.I. 159, Ex. A at 65:8–66:15) Mr. Charlevoix stated that the top of the evaporator was covered with insulation, but Mr. Charlevoix did not know the manufacturer. (*Id.* at 76:3–4; D.I. 159, Ex. B at 91:23–24) Mr. Charlevoix explained that he believes he was exposed to asbestos when removing the end caps in order to perform work to tighten the tubes on the evaporators. (D.I. 159, Ex. A at 76:5–14) To access the tubes, Mr. Charlevoix would remove nuts from the front cover which, occasionally required him to remove insulation around the nuts. (*Id.* at 76:3–14) Mr. Charlevoix also stated that, although there was a gasket under the front cover, it was likely made of rubber. (*Id.* at 249:25–250:1) Mr. Charlevoix stated that he probably did this process five or six times during his time on the USS Valley Forge. (D.I. 159, Ex. B at 96:9–13)

Mr. Kimble testified that he believed the evaporators were manufactured by "Grissom." (D.I. 159, Ex. C at 68:9–22) Mr. Kimble further stated the evaporators would have had some repairs done before Mr. Charlevoix arrived on the USS Valley Forge. (*Id.* at 111:13–112:1) Mr. Kimble stated that the exterior of the evaporator was covered in insulation, but did not know who placed the insulation there or who manufactured the insulation. (*Id.* at 116:21–117:12)

### 3. Warren Pumps

Mr. Charlevoix testified that he would repair the "wear rings and impeller" on the pumps located in the evaporator room. (D.I. 165, Ex. B at 72:12–18) Mr. Charlevoix explained that there were four pumps in the evaporator room. (*Id.* at 73:6–74:10) Mr. Charlevoix did not associate gaskets with the pumps. (*Id.* at 242:22–24) Mr. Charlevoix stated there was a "silicon-like" sealant on the pumps that had to be scraped off when an impeller was removed from a

pump. (*Id.* at 242:24–244:18)  He stated that the only thing he associated asbestos and the pumps with was the external insulation on top of the motors. (*Id.* at 247:25–248:3)

Mr. Kimble testified that Mr. Charlevoix would have worked on the brine overboard pumps at least a half a dozen times. (D.I. 165, Ex. C at 76:23–77:1)  Mr. Kimble was unable to identify the manufacturer of the gaskets. (*Id.* at 78:10–15)  Mr. Kimble stated that replacement parts would come from the Navy storeroom. (*Id.* at 78:16–79:19)  Mr. Kimble did not believe that Mr. Charlevoix's work on the pumps would have exposed him to asbestos. (*Id.* at 82:16–20)

### 4.  Crane Co.

Mr. Charlevoix did not associate any name with the valves on the USS Valley Forge. (D.I. 173, Ex. 5 at 102:20–22)  Mr. Charlevoix stated the valves were not insulated. (*Id.* at 102:23–25)  Mr. Charlevoix stated there were gaskets located on each side of the valves, but that he never took them off. (*Id.* at 103:1–5)

Mr. Kimble testified that Mr. Charlevoix would have to work on a valve if there was a leak. (D.I. 173, Ex. 6 at 195:15–19)  When a leak occurred, Mr. Charlevoix would have to repack the valve. (*Id.* at 195:23–196:1)  Mr. Kimble explained that a sharpened tool with a hook on the end was used to pull out the packing. (*Id.* at 184:1–14)  Mr. Kimble could not remember the name of the packing used. (*Id.* at 185:7–14)  Mr. Kimble also did not know the manufacturer of the steam valves or the C-valve. (*Id.* at 67:11–22)

### 5.  Ford Motor Company

Mr. Charlevoix's father had a Ford tractor when Mr. Charlevoix was growing up. (D.I. 161, Ex. C at 27:1–10)  Mr. Charlevoix would help his father with repairing the tractor. (D.I. 161, Ex. B at 193:14–19)  In the late 1950s, Mr. Charlevoix helped his father with maintenance work at Foster City Garage. (D.I. 216, Ex. 1 at 28:16–29:19)  Mr. Charlevoix identified Ford as a

type of vehicle worked on at Foster City Garage. (*Id.* at 29:20–24)

Mr. Charlevoix worked at M.J. Electric from 1966 to 1978 as a power line contractor. (D.I. 216, Ex. 1 at 33:5–20) Mr. Charlevoix stated that for roughly three months out of the year he would help in the maintenance shop doing repairs. (D.I. 216, Ex. 1 at 41:10–42:11) Mr. Charlevoix stated that M.J. Electric had about two hundred Ford pickups. (*Id.* at 37:25–38:2) He stated the models of the Ford pickups were 150s, 250s and 350s. (D.I. 161, Ex. B at 196:11–14) Mr. Charlevoix stated M.J. Electric also had two Ford dump trucks. (*Id.* at 201:10–17)

Mr. Charlevoix started working at Charlevoix Logging in 1978. (D.I. 216, Ex. 1 at 53:17–19) Mr. Charlevoix stated that Charlevoix Logging had ten Ford pickup trucks. (D.I. 161, Ex. B at 114:7–16) The models of the pickups were 150s and 250s. (*Id.* at 213:7–12) Charlevoix Logging had two Gafner Iron Mules. (D.I. 161, Ex. B at 203:17–19) Charlevoix Logging also had one Ford dump truck. (*Id.* at 218:1–2) Mr. Milligan stated that Mr. Charlevoix had a Ford logging truck when Mr. Milligan began working at Charlevoix Logging in 1979. (D.I. 216, Ex. 3 at 42:15–17)

Mr. Milligan also stated that Mr. Charlevoix performed clutch and gasket work on Ford vehicles owned by family and friends. (D.I. 216, Ex. 3 at 152:16–19) However, Mr. Milligan could not recall the manufacturer of any clutches or gaskets removed or installed by Mr. Charlevoix. (*Id.* at 151:25–153:21)

## III.   LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). The non-movant must support its contention by citing to particular documents in the record, by showing that the cited materials do not establish the absence or presence of a genuine dispute, or by showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)–(B). The existence of some alleged factual dispute may not be sufficient to deny a motion for summary judgment; rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Clark v. Welch*, Civ. NO.14-029-SLR, 2016 WL 859259, at *2 (D. Del. Mar. 3, 2016). If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## B. Maritime Law

The parties agree that maritime law applies to all naval and sea-based claims.[3] (D.I. 159

at 1) In order to establish causation in an asbestos claim under maritime law, a plaintiff must

show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the

product was a substantial factor[4] in causing the injury he suffered." *Lindstrom v. A-C Prod.*

*Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21

F. Appx. 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del.

Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016);

*Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and*

*recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid*

*Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation*

*adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017). Other courts in this Circuit recognize a

---

[3] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).

[4] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[5] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012); *see* § III(C), *infra*.

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[6] *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Stark*, 21 F. Appx. at 376).

On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. Appx. at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. Appx. at 376 (citations omitted).

---

[5] The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

[6] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury.'" *Stark*, 21 F. Appx. at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

## C. Bare Metal Defense

Should the court decide that product identification has been established, it then considers the assertion of the "bare metal" defense by the moving defendants. The bare metal defense relates to defendants in asbestos cases that "manufactured so-called 'bare-metal' products that contained or were later encapsulated in asbestos." *Conner v. Alfa Laval, Inc.,* 842 F. Supp. 2d 791, 793 n.2 (E.D. Pa. 2012). The defense shields a manufacturer from liability for any injuries caused by asbestos components, such as packing, insulation, and gaskets, that were integrated into the manufacturer's products or used as replacement parts, but which the manufacturer did not manufacture or distribute. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013).

Accordingly, courts accepting the bare metal defense refuse to impose liability upon manufacturers for dangers associated with asbestos-containing products manufactured and distributed by other entities. *See Dalton*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013); *Malone v. Air & Liquid Sys. Corp.*, 2016 WL 4522164, at *5 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015 WL 5766460 at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow*, 2017 WL 1199732, at *5 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017); *Conner*, 842 F. Supp. 2d at 801; *Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801 (S.D.N.Y. 2011); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1030 (S.D. Ill. 1989); *O'Neil v. Crane Co.*, 266 P.3d 987, 997–98 (Cal. 2012); *Taylor v. Elliott*

*Turbomachinery Co.*, 90 Cal. Rptr. 3d 414, 429 (Cal. Ct. App. 2009); *In re Asbestos Litig.*

*(Howton)*, C.A. No. N11C-03218 ASB, 2012 WL 1409011, at *1 (Del. Super. Ct. Apr. 2, 2012);

*In re Asbestos Litig. (Wolfe)*, C.A. No. N10C-08-258 ASB, 2012 WL 1415706, at *3–4 (Del.

Super. Ct. Feb. 28, 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498–99 (Wash.

2008); *Simonetta v. Viad Corp.*, 197 P.3d 127, 134–35 (Wash. 2008). The 'bare metal defense'

is recognized when maritime law applies. *Carper v. Gen. Elec. Co.*, No. 2:12-06164-ER, 2014

WL 6736205, at *1 (E.D. Pa. Sept. 4, 2014) (citing *Conner*, 842 F. Supp. 2d at 801).

### D. Michigan Law

A federal court sitting in diversity is "required to apply the substantive law of the state

whose laws govern the action." *Robertson v. Allied Signal*, 914 F.2d 360, 378 (3d Cir. 1990).

Consequently, the parties agree that Michigan substantive law applies to all land-based claims.

(D.I. 157 at 4)

Under Michigan law, a plaintiff must establish that a particular defendant's conduct was a

substantial factor in causing the plaintiff's injury.[7] *Brisboy v. Fibreboard Corp.*, 418 N.W.2d.

650, 653 (Mich. 1988). The frequency and intensity of exposure to asbestos-containing

products, "in the scope of [the plaintiff's] entire work history," should be considered in

determining whether defendant's conduct was a substantial contributing factor. *Allen v. Owens-*

*Corning Fiberglas Corp.*, 571 N.W.2d 530, 533 (Mich. Ct. App. 1997).

Moreover, the plaintiff must show "the manufacturer's asbestos product was used at the

specific site within the workplace where [the plaintiff] worked." *Roberts v. Owens-Corning*

*Fiberglas Corp.*, 726 F. Supp. 172, 174 (W.D. Mich. 1989) (citing *Roehling v. Nat'l Gypsum Co.*

---

7 Michigan has adopted the "substantial factor" test of legal causation as outlined in the
Restatement of Torts, 2d § 431. *Brisboy v. Fibreboard Corp.*, 418 N.W.2d. 650, 653 (Mich.
1988).

*Gold Bond Bldg. Prod.*, 786 F.2d 1225, 1228 (4th Cir. 1986). It is not enough for the plaintiff to show that the defendant's product was present somewhere at his workplace. *Id.* (citing *Lohrman v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162–63 (4th Cir. 1986)).

## IV.   DISCUSSION

### a.   Caterpillar Inc.

The court recommends granting Caterpillar's motion for summary judgment, because Plaintiff has failed to show that a material issue of fact exists as to whether Caterpillar's product was a substantial factor in causing Mr. Charlevoix's injuries under Michigan law. *Brisboy*, 418 N.W.2d. at 653.

Plaintiff alleges that Mr. Charlevoix was exposed to asbestos-containing products used in connection with Caterpillar equipment during his time at M.J. Electric and Charlevoix Logging. (D.I. 171) Mr. Charlevoix stated that he performed maintenance work on eight Caterpillar bulldozers during his time at M.J. Electric: four D3s, two D4s, one D6, and one D8. (D.I. 155, Ex. 1 at 140:2–141:15) Mr. Charlevoix explained that the maintenance primarily involved fixing hydraulic leaks. (*Id.* at 145:7–15) Mr. Charlevoix stated that he did not associate asbestos exposure with his work at M.J. Electric. (*Id.* at 157:22–158:4) Mr. Milligan also could not recall any specific maintenance or repairs that Mr. Charlevoix performed on any vehicles at M.J. Electric. (D.I. 155, Ex. 3 at 34:21–23)

During his time at Charlevoix Logging, Mr. Charlevoix also used Caterpillar equipment: a Caterpillar D4 tractor, a Caterpillar 12 grader, and three Fabtek Harvesters. (D.I. 155 at 4) Mr. Charlevoix stated that he replaced the tracks on the D4 tractor. (D.I. 155, Ex. 1 at 160:19–21) Mr. Charlevoix did not believe he was exposed to asbestos when replacing the tracks. (*Id.* at 160:22–161:5) Mr. Milligan recalled Mr. Charlevoix performing two radiator jobs, one

hydraulic pump job, and one blade repair job on the D4 tractor. (D.I. 155, Ex. 3 at 44:18–22) Mr. Milligan did not know whether Mr. Charlevoix was exposed to asbestos during this work. (*Id.* at 45:12–15) Mr. Charlevoix stated that he replaced the injectors and would "tighten up knuckles and front ends" on the Caterpillar 12 grader. (D.I. 115, Ex. 1 at 118:17–19) Mr. Charlevoix stated that the repairs on the grader did not involve asbestos. (*Id.* at 119:4–5) Mr. Charlevoix also cleaned the brakes on the grader with Mr. Milligan. (*Id.* at 166:7–25) Mr. Milligan did not know whether Mr. Charlevoix was exposed to asbestos during the brake work. (D.I. 115, Ex. 3 at 105:13–15) Mr. Charlevoix replaced water pumps on one harvester. (D.I. 115, Ex. 1 at 171:21–24) Mr. Charlevoix did not know whether he was exposed to asbestos when replacing the water pump. (*Id.* at 172:2–4) Mr. Milligan recalled Mr. Charlevoix working on hydraulic systems, a carrier, and final drives in the field, but Mr. Milligan did not know whether this work exposed Mr. Charlevoix to asbestos. (D.I. 115, Ex. 3 at 64:3–12) Mr. Milligan states that he removed gaskets from engines at M.J. Electric. (D.I. 171, Ex. 4 at 182:24–183:16) Mr. Milligan explained that he would use wire brushes to remove a gasket. (*Id.*) Mr. Milligan also explained that he performed brake work at Charlevoix Logging. (*Id.* at 185:1–7)

Plaintiff relies largely on the testimony of Eugene Sweeney, a Caterpillar corporate representative, in asserting Caterpillar used asbestos-containing components. (D.I. 117, Ex. 5) Sweeney states that gaskets used in Caterpillar equipment from 1960 to the 1980s sometimes contained asbestos. (D.I. 171, Ex. 5 at 18:18–19:3) Sweeney also states that Caterpillar sold replacement gaskets for its equipment. (D.I. 171, Ex. 5 at 45:4–6) Plaintiff also cites to a Caterpillar Service Magazine which shows that Caterpillar sold tools designed for asbestos removal. (D.I. 171, Ex. 19) Plaintiff further cites to the deposition of Robert Niemeier, an employee of Caterpillar for twenty-five years, in which he states that Caterpillar continued to sell

asbestos-containing products, without any health instructions, until 1984. (D.I. 171, Ex. 14 at 33:12–16)

However, Plaintiff's evidence is not enough to establish exposure to an asbestos-containing Caterpillar product. The depositions of Sweeney and Niemeier, and the Caterpillar Service Magazine, show that Caterpillar sometimes used asbestos-containing products for its equipment, but it is not enough to show that Mr. Charlevoix was exposed to asbestos. Additionally, Niemeier's testimony addresses marine diesel engines. (D.I. 171, Ex. 5 at 50:14) Neither Mr. Charlevoix nor Mr. Milligan identified marine diesel engines. (D.I. 184 at 1) Mr. Milligan's testimony also does not establish that Mr. Charlevoix was exposed to asbestos during his work at M.J. Electric or Charlevoix Logging.

Plaintiff has shown that Mr. Charlevoix worked with Caterpillar products, but has not shown that he was exposed to an asbestos-containing Caterpillar product. Even with the facts viewed in the light most favorable to Plaintiff, generalities and speculation do not create a dispute of material fact. *Walkup v. Air & Liquid Sys. Corp.*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014). "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Id.* (citing *Leonard v. Stemtech Health Scis., Inc.*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)).

Plaintiff has not submitted evidence indicating that exposure to a Caterpillar product was a substantial factor in causing Mr. Charlevoix's alleged injuries under Michigan law. *Brisboy,*

418 N.W.2d. at 653. Consequently, the court recommends granting Caterpillar's motion for summary judgment.

### b. VIAD/Griscom-Russell[8]

The court recommends granting VIAD's motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether VIAD's product was a substantial factor in causing Mr. Charlevoix's injuries under maritime law. *See Lindstrom*, 424 F.3d at 492.

Plaintiff alleges that Mr. Charlevoix was exposed to asbestos-containing products used in connection with Griscom-Russell evaporators while serving aboard the USS Valley Forge. (D.I. 175) Plaintiff relies on the depositions of Mr. Kimble and Mr. Charlevoix regarding Mr. Charlevoix's exposure to asbestos. (D.I. 175) Plaintiff also relies on the opinions of Arnold Moore, an engineer. (*Id.*)

Mr. Charlevoix was assigned to the evaporator room aboard the USS Valley Forge. (D.I. 159 at 2) It is undisputed that there were Griscom-Russell evaporators on the USS Valley Forge. (D.I. 175, Ex. 4) When performing maintenance on the evaporators, Mr. Charlevoix was either "shocking or spinning" the tubes, or removing scale buildup. (D.I. 150, Ex. A at 69:7–72:18) Mr. Charlevoix did not believe cleaning the tubes exposed him to asbestos. (D.I. 159, Ex. B at 99:6–10) However, Mr. Charlevoix stated that he was exposed to asbestos when removing the end caps to tighten the tubes. (D.I. 175, Ex. 7 at 76:5–14) Mr. Kimble also stated that he

---

[8] Plaintiff has failed to show that a material issue of fact exists as to whether Mr. Charlevoix was exposed to asbestos from products manufactured or supplied by Griscom-Russell aboard the USS Valley Forge. As such, the court makes no recommendations as to whether VIAD has successor liability for claims arising from Griscom-Russell products.

believed Mr. Charlevoix would have been exposed to asbestos from "asbestos lines running through the evaporators." (D.I. 175, Ex. 8 at 107:9–25)

Nonetheless, Mr. Charlevoix and Mr. Kimble's depositions are not enough to establish exposure to an asbestos-containing Griscom-Russell product. Mr. Charlevoix and Mr. Kimble both state that Mr. Charlevoix was exposed to asbestos while performing maintenance on the evaporators, however, the record does not provide information to infer that the materials were manufactured by Griscom-Russell. (*See* D.I. 175) Mr. Charlevoix did not know who manufactured the external insulation used with the evaporators. (D.I. 159, Ex. A at 82:21–83:2) Moreover, there is no evidence of record to support whether the insulation was original to the installation of the evaporators. The USS Valley Forge was fifteen years old when Mr. Charlevoix began his service. (D.I. 159 at 5) Additionally, the USS Valley Forge underwent four overhauls before Mr. Charlevoix's service began. (*Id.*) Mr. Kimble stated that he did not know the maintenance history of the evaporators located on the USS Valley Forge. (D.I. 159, Ex. C at 55:9–14) Mr. Charlevoix also stated that he did not believe the gaskets or packing were original to the evaporators. (D.I. 159, Ex. A at 63:19–25) Even with the facts viewed in the light most favorable to Plaintiff, generalities and speculation do not create a dispute of material fact. *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014). Although Griscom-Russell product identification aboard the USS Valley Forge is established, the evidence in the record fails to create a material issue of fact concerning whether Mr. Charlevoix was exposed to an asbestos-containing product manufactured by Griscom-Russell. "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be

supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Leonard v. Stemtech Health Scis., Inc.*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)).

Plaintiff further argues that under *Quirin v. Lorillard Tobacco Co.*, Griscom-Russell is responsible for the effects of any exposure relating to its product, whether from original or replacement parts, regardless of the manufacturer. 17 F. Supp. 3d 760, 769–70 (N.D. Ill. 2014). Thus, Plaintiff contends that the bare metal defense does not apply because Griscom-Russell specified the use of asbestos gaskets for its evaporators on the USS Valley Forge. (D.I. 175 at 8; D.I. 175, Exs. 4, 9) In support of this assertion, Plaintiff cites to the opinions of Arnold Moore. (D.I. 175 at 6) Moore states that during the 1960s, much of the machinery and equipment aboard Navy ships was insulated with components that contained asbestos. (D.I. 175, Ex. 3 at 5) Moore further states that evaporators were insulated with asbestos felt. (*Id.* at 12)

Application of the bare metal defense warrants summary judgment in VIAD's favor, because Plaintiff fails to show that a material issue of fact exists as to whether Griscom-Russell provided the insulation to be used with its evaporators aboard the USS Valley Forge. VIAD cites to the declaration of Charles Cushing, a naval architect and marine engineer, who states that Griscom-Russell did not manufacture gasket material. (D.I. 159, Ex. D at ¶ 8) Cushing states that any replacement gasket material would have come from Navy Ship Stores, and would not have been manufactured by Griscom-Russell.[9] (*Id.*) Cushing also states that to supply asbestos

---

[9] Mr. Charlevoix's testimony concerning gaskets related to Griscom-Russell equipment indicates that the only gaskets he encountered were made of rubber. (D.I. 159, Ex. A at 249:25–250:1)

gasket material to the Navy, a company had to be on the Qualified Products List, and Griscom-Russell was not listed. (*Id.*) Further, Moore's declaration does not establish that Griscom-Russell supplied the asbestos materials used with its evaporators. Lastly, VIAD states that it had nothing to do with the external insulation placed on its evaporators. (D.I. 181 at 4)

Moreover, the court has previously declined to follow *Quirin*, and determined the weight of authority favors the bare metal defense.[10] *Conner*, 842 F. Supp. 2d at 794; *see Lindstrom*, 424 F.3d at 495; *Denbow*, 2017 WL 1199732, at *5 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017); *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Malone*, 2016 WL 4522164, at *5 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801 (S.D.N.Y. 2011); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1030 (S.D. Ill. 1989); *O'Neil v. Crane Co.*, 266 P.3d 987, 997–98 (Cal. 2012); *Taylor v. Elliot Turbomachinery Co.*, 90 Cal. Rptr. 3d 414, 429 (Cal. Ct. App. 2009); *In re Asbestos Litig. (Howton)*, C.A. No. N11C-03218 ASB, 2012 WL 1409011, at *1 (Del. Super. Ct. Apr. 2, 2012); *In re Asbestos Litig. (Wolfe)*, C.A. No. N10C-08-258 ASB, 2012 WL 1415706, at *3–4 (Del. Super. Ct. Feb. 28, 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498–99 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127, 134–35 (Wash. 2008).

Plaintiff has failed to show that a material issue of fact exists as to whether Mr. Charlevoix was exposed to asbestos from products manufactured or supplied by Griscom-Russell

---

[10] *See* § III(C), *supra.*

aboard the USS Valley Forge. Consequently, the court recommends granting VIAD's motion for summary judgment under maritime law. *See Lindstrom*, 424 F.3d at 492.

### c. Warren Pumps

The court recommends granting Warren Pumps' motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether Warren Pumps' product was a substantial factor in causing Mr. Charlevoix's injuries under maritime law. *See Lindstrom*, 424 F.3d at 492.

Plaintiff alleges that Mr. Charlevoix was exposed to asbestos-containing products used in conjunction with pumps manufactured by Warren Pumps. (D.I. 177) Specifically, Plaintiff argues that the pumps incorporated asbestos-containing packing and gaskets. (*Id.* at 9) Plaintiff relies on the depositions of Mr. Charlevoix and Mr. Kimble to establish Mr. Charlevoix's work history on the pumps in the evaporator room. (D.I. 177) Plaintiff also relies on the opinions of Arnold Moore, an engineer. (D.I. 177 at 5)

Mr. Charlevoix worked as a boiler tender maintaining pumps in the evaporator room during his service aboard the USS Valley Forge. (D.I. 165 at 3) It is undisputed that there were pumps manufactured by Warren Pumps in the evaporator room. (D.I. 177, Ex. 4) Mr. Charlevoix stated that he worked on four pumps in the evaporator room. (D.I. 165, Ex. B at 74:6–9) Mr. Kimble remembered Mr. Charlevoix replacing the impeller on the brine overboard pumps six times, which involved removing the bolts and external flange gaskets. (D.I. 165, Ex. C at 76:19–77:18) Mr. Kimble explained that the process involved cleaning flanges, cutting new gaskets, and putting a new gasket on the impeller. (D.I. 177, Ex. 7 at 77:5–18) Mr. Charlevoix stated the top of the pump was covered in asbestos. (D.I. 177, Ex. 5 at 76:3–4) However, Mr. Charlevoix did not know whether he was exposed to asbestos from his work on the pumps. (*Id.*

at 75:24–76:1)  Mr. Charlevoix also stated the external insulation on the pumps contained asbestos, but Mr. Charlevoix did not know who manufactured the external insulation. (*Id.* at 82:21–83:6)  However, Mr. Charlevoix later stated the external insulation was on the motor, not the pump. (D.I. 193, Ex. B at 248:5–17)

The depositions of Mr. Charlevoix and Mr. Kimble are not enough to establish that Warren Pumps' products were a substantial factor in causing Mr. Charlevoix's injuries.  Mr. Charlevoix and Mr. Kimble identified asbestos-containing components, but did not state the pumps themselves were asbestos-containing. (D.I. 193 at 7)  Mr. Kimble did not recall the manufacturer of the gaskets. (D.I. 165, Ex. C at 78:10–15)  Moreover, Mr. Charlevoix stated that he did not associate gaskets with the pumps. (D.I. 165, Ex. B at 242:17–24)  There is also no evidence of record concerning whether the insulation on the pumps were original to the pumps' installation, in light of the many overhauls the USS Valley Forge underwent before Mr. Charlevoix's service began. (D.I. 193 at 8)  Further, Mr. Charlevoix stated that he worked on one pump five times, and the other pumps only once or twice. (D.I. 165, Ex. B at 73:12–74:15)  Even with the facts viewed in the light most favorable to Plaintiff, generalities and speculation do not create a dispute of material fact. *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014).  Although Warren Pumps product identification aboard the USS Valley Forge is established, the evidence in the record fails to create a material issue of fact concerning the substantial exposure requirement.  "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference.  Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4,

2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Leonard v. Stemtech Health Scis., Inc.*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)).

Plaintiff further argues that under *Quirin*, Warren Pumps is responsible for the effects of any exposure relating to its products, whether from original or replacement parts, regardless of the manufacturer. 17 F. Supp. 3d at 769–70. Thus, Plaintiff contends that the bare metal defense does not apply because Warren Pumps specified the use of asbestos-containing packing and gaskets with its pumps. (D.I. 177 at 18–21) In support of this assertion, Plaintiff cites to Warren Pumps manufacturer plans, the Warren Pumps Instruction Book, and Navy specifications. (D.I. 177, Exs. 2, 4, 8) Plaintiff states the documents establish the pumps aboard the USS Valley Forge used asbestos-containing components. (D.I. 177 at 8–10) Plaintiff also cites to the declaration of Arnold Moore. (D.I. 177 at 8–10) Moore states that Warren Pumps used insulating material that contained asbestos on its pumps. (D.I. 177, Ex. 3 at 10–11) Further, Plaintiff cites to the testimony of Warren Pumps' corporate representative, Roland Doktor, in which he states that Warren Pumps sold pumps containing asbestos gaskets to the Navy. (D.I. 177, Ex. 9)

Application of the bare metal defense warrants summary judgment in Warren Pumps' favor, because Plaintiff fails to show that a material issue of fact exists as to whether Mr. Charlevoix was exposed to an asbestos-product manufactured by Warren Pumps. The Warren Pumps manufacturer plans, the Warren Pumps Instruction Book, the Navy specifications, and Moore's declaration establish that pumps manufactured by Warren Pumps were located in the evaporator and fire room, but the documents do not establish that Mr. Charlevoix was exposed to

asbestos from a product Warren Pumps manufactured.[11] (D.I. 177, Exs. 2, 3, 4, 8) Additionally, Doktor's testimony does not establish that Mr. Charlevoix worked on an asbestos-containing pump manufactured by Warren Pumps. (D.I. 177, Ex. 9, 10)

Again, I recommend that the court decline to follow *Quirin*. *See* § IV(b), *supra*. As such, the bare metal defense forms the basis for recommending dismissal of Plaintiff's claims against Warren Pumps in the instant case. *Malone*, 2016 WL 4522164, at *5 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015 WL 5766460 at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow*, 2017 WL 1199732, at *5 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

Plaintiff has failed to show that a material issue of fact exists as to whether Mr. Charlevoix was exposed to asbestos from products manufactured or supplied by Warren Pumps. Consequently, the court recommends granting Warren Pumps' motion for summary judgment under maritime law. *See Lindstrom*, 424 F.3d at 492.

### d. Crane Co.

The court recommends granting Crane's motion for summary judgment because Plaintiff has failed to show that a material issue of fact exists as to whether Crane's product was a

---

[11] Warren Pumps acknowledges that a single asbestos-containing internal component (a 1/64 inch gasket) is identified on a drawing of a fresh water pump and an evaporator feed pump. (D.I. 177, Ex. 4) However, Mr. Charlevoix did not state that he worked with this internal component in his testimony.

substantial factor in causing Mr. Charlevoix's injuries under maritime law. *See Lindstrom*, 424 F.3d at 492.

Plaintiff alleges that Mr. Charlevoix was exposed to asbestos-containing products used in connection with Crane valves while serving aboard the USS Valley Forge. (D.I. 173) Plaintiff argues Crane specified the use of asbestos-containing packing and gaskets with its valves. (D.I. 173 at 7–8) Plaintiff relies largely on Mr. Kimble's testimony regarding Mr. Charlevoix's work history. (D.I. 173) However, Mr. Kimble's testimony is not enough to establish causation. Mr. Kimble explained that Mr. Charlevoix would have to work on a valve if there was a leak. (D.I. 173, Ex. 6 at 195:15–19) When a leak occurred, Mr. Charlevoix would have to repack the valve. (*Id.* at 195:23–196:1) Mr. Kimble explained that a sharpened tool with a hook on the end was used to pull out the packing. (*Id.* at 184:1–14) Mr. Kimble could not remember the name of the packing used. (*Id.* at 185:7–14) Mr. Kimble also did not know the manufacturer of the steam valves or the C-valve. (*Id.* at 67:11–22) Mr. Kimble stated the steam valves did not require day-to-day maintenance. (*Id.* at 85:6–12) Mr. Charlevoix did not associate any name with the valves. (D.I. 173, Ex. 5 at 102:20–22). Mr. Charlevoix also stated the valves were not insulated. (*Id.* at 102:23–25) Mr. Charlevoix stated there were gaskets located on each side of the valves, but that he never removed them. (*Id.* at 103:1–5)

Plaintiff counters that circumstantial evidence establishes that Mr. Charlevoix was exposed to asbestos from Crane valves. (D.I. 173) First, Plaintiff states that Crane drawings show that several valves on the USS Valley Forge were manufactured by Crane. (D.I. 173, Ex. 4) Secondly, Plaintiff cites to the declaration of Arnold Moore, an engineer, who states that Crane manufactured and provided valves for the USS Valley Forge, and specified the use of asbestos-containing packing to seal valve stems. (D.I. 173, Ex. 3 at 15) Plaintiff also relies on the

deposition of William McLean, a corporate representative of Crane, who testified that Crane used asbestos-containing components with its valves, and that it was foreseeable that parts of the valve would need to be replaced. (D.I. 173, Ex. 14 at 15:17–21; 51:6–15)

Contrary to Plaintiff's assertion, the evidence is insufficient to withstand a motion for summary judgment, even when viewed in the light most favorable to Plaintiff. The documents produced by Plaintiff, and the declaration of Moore, show that Crane valves were located in the evaporator room, but they do nothing more than show the presence of Crane valves in the evaporator room—they do not establish exposure. Moreover, McLean's testimony does not establish that the valves on the USS Valley Forge contained asbestos packing manufactured by Crane. Thus, Plaintiff has not produced evidence sufficient to create a genuine issue of fact as to whether Mr. Charlevoix was substantially exposed to respirable asbestos dust from a Crane product. "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Leonard*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)).

Plaintiff further argues that under *Quirin*, Crane is responsible for the effects of any exposure relating to its products, whether from original or replacement parts, regardless of the manufacturer. 17 F. Supp. 3d at 769–70. Thus, Plaintiff contends that the bare metal defense does not apply because Crane manufactured valves designed to be used with asbestos-containing packing and gaskets. (D.I. 173 at 15) In support of this assertion, Plaintiff cites to a document

produced by Crane, dated October 1, 1942, that lists materials for the USS Valley Forge, which refers to packing that is "coil form, asbestos and wire jacket." (D.I. 173, Ex. 7) Plaintiff also relies on Crane's objections and responses to interrogatories, filed in 2011, from a lawsuit in the state of New York. (D.I. 173, Ex. 8) In a response, Crane states, "Certain of the valves had enclosed within their metal structure asbestos-containing gaskets, packing, or discs. Crane Co. did not manufacture the asbestos-containing components that may have been encapsulated within the valves, but purchased them from other companies." (D.I. 173, Ex. 8 at 12) Plaintiff also highlights that Crane sold asbestos-containing packing and gaskets in its 1952 piping catalog (D.I. 173, Ex. 9), and that Crane was "acknowledged" in a 1946 Navy manual, entitled "Navy Machinery," which states asbestos insulation should be used for high temperatures. (D.I. 173, Ex. 10) Additionally, Plaintiff emphasizes that Crane's purchase orders show that it sold asbestos-containing packing and gasket replacement parts to the Navy. (D.I. 173, Exs. 11, 12) Plaintiff highlights that in 1943, Crane created a manual on how to remove packing. (D.I. 173, Ex. 13 at 26) Lastly, Plaintiff relies on the testimony of McLean, in which he states Crane sold replacement gaskets and packing. (D.I. 173, Ex. 14 at 50:23–51:5)

Nonetheless, application of the bare metal defense warrants summary judgment in Crane's favor, because Plaintiff fails to show that a material issue of fact exists as to whether Crane manufactured and supplied asbestos-containing valves for the USS Valley Forge. The drawings depicting the valves on the USS Valley Forge, and the list of materials within the drawings, only establish that Crane valves were on the USS Valley Forge, and that at the time of installation, Crane listed asbestos packing as a type of insulation. (D.I. 173, Ex. 4, 7) The drawings and material list do not establish that Crane supplied asbestos-containing valves. Moreover, the material list is dated October 1, 1942, roughly twenty years before Mr. Charlevoix

boarded the USS Valley Forge. (D.I. 173, Ex. 7)  Plaintiff states that the testimony of Mr.

Kimble, Mr. Charlevoix, and the testimony of McLean, establish that replacing the packing was

expected and a regular part of maintenance of the valves. (D.I. 173 at 11–12)  Thus, there is no

evidence of record to support whether any packing removed from the Crane valves from 1961 to

1964, was original to installation of the valves.  Plaintiff also admits that the purchase orders are

not specific to the USS Valley Forge. (D.I. 173 at 11)  Therefore, the orders do not establish that

Crane sold replacement asbestos-containing packing and gaskets for the USS Valley Forge.

Moreover, the 2011 interrogatory response, the 1952 piping catalog, the 1946 Navy Manual, the

1943 "packing removal manual," and McLean's testimony, do not establish that Crane installed

asbestos-containing valves aboard the USS Valley Forge. (D.I. 173, Exs. 8, 9, 10, 13, 14)

Crane asserts there is no evidence that it manufactured or sold any asbestos-containing

product to be used with its valves. (D.I. 180 at 1)  Crane emphasizes that its corporate

representative, Anthony Pantaleoni, testified that Crane valves could be used with asbestos and

non-asbestos packing, and did not require any insulation to operate properly. (D.I. 151, Ex. D at

¶¶ 3, 4)  Pantaleoni further states the decision to insulate the valves was made by the customer,

not Crane. (*Id.*)

Again, I recommend that the court decline to follow *Quirin. See* § IV(b), *supra.* As

such, the bare metal defense forms the basis for recommending dismissal of Plaintiff's claims

against Crane in the instant case. *Malone*, 2016 WL 4522164, at *5 (D. Del. Aug. 29, 2016),

*report and recommendation adopted*, 2016 WL 5339665 (D. Del. Sept. 22, 2016); *Dumas*, 2015

WL 5766460 at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL

310724 (D. Del. Jan. 26, 2016); *Mitchell*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016),

*report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow*, 2017

WL 1199732, at *5 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

Plaintiff has failed to show that a material issue of fact exists as to whether Mr. Charlevoix was exposed to asbestos from products manufactured or supplied by Crane. Consequently, the court recommends granting Crane's motion for summary judgment under maritime law. *See Lindstrom*, 424 F.3d at 492.

### e. Ford Motor Company

The court recommends granting Ford's motion for summary judgment, because Plaintiff has failed to show that a material issue of fact exists as to whether Ford's product was a substantial factor in causing Mr. Charlevoix's injuries under Michigan law. *Brisboy*, 418 N.W.2d. at 653.

Plaintiff alleges that Mr. Charlevoix was exposed to asbestos-containing component parts used in Ford vehicles. (D.I. 216) Plaintiff relies on the depositions of Mr. Charlevoix and Mr. Milligan regarding Mr. Charlevoix's work history with Ford products. (*Id.*)

Mr. Charlevoix's father had a Ford tractor when Mr. Charlevoix was growing up. (D.I. 161, Ex. C at 27:1–10) Mr. Charlevoix said his father got replacement parts from a Ford dealer. (D.I. 216, Ex. 1 at 28:5–7) Mr. Charlevoix helped his father with repairs, but could not remember any specific work that he performed himself. (D.I. 161, Ex. B at 193:14–19) In the late 1950s, Mr. Charlevoix helped his father with maintenance work at Foster City Garage. (D.I. 216, Ex. 1 at 28:16–29:19) Mr. Charlevoix said his father worked on clutches, brakes, and engines. (*Id.* at 29:3–12) Mr. Charlevoix identified Ford as a type of vehicle worked on at Foster City Garage. (*Id.* at 29:20–24) However, Mr. Charlevoix could not remember a specific vehicle that he worked on himself. (D.I. 161, Ex. B at 28:2–4) Mr. Milligan also could not remember a

specific vehicle that Mr. Charlevoix worked on at Foster City Garage. (D.I. 161, Ex. D at 29:2–4)

Mr. Charlevoix worked at M.J. Electric from 1966 to 1978 as a power line contractor. (D.I. 216, Ex. 1 at 33:5–20) Mr. Charlevoix stated that for roughly three months out of the year he would help in the maintenance shop doing repairs. (*Id.* at 41:10–42:11) However, Mr. Charlevoix could not remember any specific work he performed in the maintenance shop. (D.I. 161, Ex. B at 94:13–16) Mr. Charlevoix stated that M.J. Electric had about two hundred Ford pickups. (D.I. 216, Ex. 1 at 37:25–38:2) He stated the models of the Ford pickups were 150s, 250s and 350s. (D.I. 161, Ex. B at 196:11–14) He did not know the maintenance history of the Ford pickups. (*Id.* at 196:24–197:1) Mr. Charlevoix explained that M.J. Electric would obtain replacement parts from local dealers, but did not name any specific parts. (D.I. 216, Ex. 1 at 45:8–16; 52:7–14) Mr. Charlevoix stated that he saw mechanics at M.J. Electric work on brakes, engines, and perform tune-ups on the Ford pickups. (*Id.* at 46:15–29) He said that he probably assisted with gasket work on the pickups. (*Id.* at 46:21–22; D.I. 161, Ex. B at 197:19–21) Mr. Charlevoix stated that he saw mechanics use air hoses to clean out the area where brakes were installed, and the air came out dusty and muddy. (D.I. 216, Ex. 1 at 47:15–23) Mr. Charlevoix stated M.J. Electric also had two Ford dump trucks. (D.I. 161, Ex. B at 201:10–17) He stated that he never performed any maintenance on the dump trucks. (*Id.* at 202:2–11) Mr. Milligan could not recall any specific maintenance that Mr. Charlevoix performed at M.J. Electric. (D.I. 216, Ex. 3 at 34:21–23) Mr. Milligan also did not know if Mr. Charlevoix's work at M.J. Electric exposed him to asbestos. (*Id.* at 39:8–10)

Mr. Charlevoix started working full time at Charlevoix Logging in 1978. (D.I. 216, Ex. 1 at 53:17–19) Mr. Charlevoix stated that Charlevoix Logging had ten Ford pickup trucks. (D.I.

161, Ex. B at 114:7–16) The models of the pickups were 150s and 250s. (*Id.* at 213:7–12) Mr. Milligan stated brake work was performed on the pickup trucks, but did not know who manufactured the brakes that were removed or installed on the pickup trucks. (D.I. 216, Ex. 3 at 144:12–145:9) Mr. Milligan stated that Mr. Charlevoix had a Ford logging truck when Mr. Milligan began working at Charlevoix Logging in 1979. (D.I. 216, Ex. 3 at 42:15–17) Mr. Milligan stated that Mr. Charlevoix performed gasket, transmission, and clutch work on the Ford logging truck. (D.I. 216, Ex. 3 at 129:1–134:2) Mr. Milligan did not know the manufacturer of the gaskets or the clutches removed or installed on the logging truck. (*Id.*) Mr. Milligan did not know whether Mr. Charlevoix's maintenance work on the logging truck exposed him to asbestos. (*Id.* at 44:13–16) Charlevoix Logging also had two Gafner Iron Mules. (D.I. 161, Ex. B at 203:17–19) Mr. Charlevoix said that he performed clutch work on the Iron Mules. (*Id.* at 203:23–24) Mr. Charlevoix stated that the first clutch he removed was manufactured by Ford. (*Id.* at 206:25–207:4) He also stated that the gaskets removed from the Iron Mules were manufactured by Ford. (*Id.* at 210:20–25) Mr. Milligan stated that Mr. Charlevoix was around when repairs were done to the Iron Mules. (D.I. 216, Ex. 3 at 55:20–56:8) However, Mr. Milligan did not know whether the work performed around Mr. Charlevoix exposed him to asbestos. (*Id.* at 56:23–57:2) Charlevoix Logging also had one Ford dump truck. (D.I. 161, Ex. B at 218:1–2) Mr. Charlevoix did not know the maintenance history of the dump truck. (*Id.* at 218:12–14) Mr. Charlevoix stated he performed clutch work on the dump truck twice in the 1990s. (*Id.* at 218:18–219:3) Mr. Charlevoix did not know the manufacturer of the clutches he removed or installed. (*Id.* at 218:4–7) Mr. Charlevoix also performed gasket work on the dump truck three times, but could not remember the manufacturer of the gaskets he removed or installed. (*Id.* at 219:12–220:16) Mr. Milligan could not recall any specific work Mr. Charlevoix

30

performed on the dump truck. (D.I. 216, Ex. 3 at 59:19–22) Mr. Milligan also stated that Mr.

Charlevoix performed clutch and gasket work on Ford vehicles owned by family and friends.

(D.I. 216, Ex. 3 at 152:16–19) However, Mr. Milligan could not recall the manufacturer of any

clutches or gaskets removed or installed by Mr. Charlevoix. (D.I. 216, Ex. 3 at 151:25–153:21)

The depositions of Mr. Charlevoix and Mr. Milligan are not enough to establish

causation. Neither Mr. Milligan nor Mr. Charlevoix could state whether any of the work Mr.

Charlevoix performed exposed him to asbestos. As such, the depositions do not create an issue

of material fact as to whether Mr. Charlevoix was exposed to asbestos from a Ford product.

Plaintiff counters that circumstantial evidence establishes that Mr. Charlevoix was

exposed to asbestos from Ford products. (D.I. 216) First, Plaintiff cites to Ford's responses to

interrogatories, filed in 2008, from a lawsuit in the state of California. (D.I. 216, Ex. 4) One

response states:

> Ford manufactured and sold some vehicles that incorporated friction components
> such as brake linings, brake pads, and clutch facings that were composed, in part,
> of asbestos. Ford did not, however, manufacture the asbestos-containing friction
> components that were used in its vehicles. Ford also sold replacement parts that
> included asbestos-containing brake linings, brake pads and clutch facings to
> franchised Ford dealers and authorized distributors in the United States. Ford did
> not manufacture the asbestos-containing friction components that it sold as
> replacement parts, but rather purchased those components from suppliers. Ford
> believes asbestos-containing friction components were incorporated into its
> vehicles since it began selling mass production vehicles in the early 1900s when
> the business was acquired.

(D.I. 216, Ex. 4 at 3) Plaintiff also cites to Ford's responses to interrogatories from 1984, from a

lawsuit in the state of California, in which Ford stated "certain automotive parts, including brake

linings and clutch facings, have always contained asbestos." (D.I. 216, Ex. 5 at 8) Plaintiff

further relies on the depositions of Mark Taylor, a corporate representative of Ford, who testified

that most Ford brakes had asbestos components. (D.I. 216, Ex. 6 at 14–16) Plaintiff also cites to

the deposition of Taylor, and a Ford engineering document, in support of the assertion that Ford incorporated asbestos gaskets into its vehicles. (D.I. 216, Ex. 8 at 18; D.I. 216, Ex. 9) Taylor further states that Ford stopped using asbestos gaskets in 1980. (D.I. 216, Ex. 12 at 67) Plaintiff also cites to an internal Ford memo from 1984, in which Ford was told samples of its insulating materials contained significant amounts of asbestos. (D.I. 216, Ex. 10 at 1) Lastly, Plaintiff asserts that Ford knew asbestos was harmful. Plaintiff cites to a 1973 Ford maintenance bulletin that states "under no circumstances shall compressed air blowoff be used to clean brakes, brake drums, clutches and associated components." (D.I. 216, Ex. 7) Additionally, Plaintiff cites to a Ford interoffice memo recommending the use of a vacuum cleaner during the removal of gaskets due to the dust created from the maintenance process. (D.I. 216, Ex. 11)

Contrary to Plaintiff's assertion, the circumstantial evidence is insufficient to withstand a motion for summary judgment, even when viewed in the light most favorable to Plaintiff. The documents produced by Plaintiff, and the deposition of Taylor, establish that asbestos-containing components were sometimes incorporated into Ford products, but the documents do not establish exposure. Furthermore, the evidence cited by Plaintiff does not establish that Ford manufactured asbestos-components for its products. For example, Taylor agrees in a deposition that Ford did not manufacture asbestos brakes, asbestos clutches, or asbestos gaskets. (D.I. 216, Ex. 6 at 12– 14) Additionally, the Ford interoffice memo cited by Plaintiff talks about "gaskets of concern" regarding exposure to asbestos dust, however, the document does not list a gasket manufactured by Ford. (D.I. 216, Ex. 11) Moreover, Ford's 2008 interrogatory response states that Ford did not manufacture the asbestos-containing friction components. (D.I. 216, Ex. 4 at 3) Thus, Plaintiff has not produced evidence sufficient to create a genuine issue of fact as to whether Mr. Charlevoix was substantially exposed to respirable asbestos dust from a Ford product. *See*

*Brisboy*, 418 N.W.2d. at 653. "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citing *Leonard*, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)).

Plaintiff has not submitted evidence indicating that exposure to a Ford product was a substantial factor in causing Mr. Charlevoix's alleged injuries under Michigan law. *Brisboy*, 418 N.W.2d. at 653. Consequently, the court recommends granting Ford's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, and as indicated in the chart *infra*, the court recommends granting Defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| Caterpillar Inc. | GRANTED |
| VIAD Corp. | GRANTED |
| Warren Pumps | GRANTED |
| Crane Co. | GRANTED |
| Ford Motor Company | GRANTED |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 31, 2017

Sherry R. Fallon
United States Magistrate Judge